UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
PAUL VASSEL,

                    Plaintiff,

          -against-

PALISADES FUNDING CORP., MICHAEL
JORDON, VICTORIA VANDERGRIFT, et
al.,

                    Defendants.
----------------------------------X

**MEMORANDUM & ORDER**
19-CV-3241(EK)(RER)

ERIC KOMITEE, United States District Judge:

        Plaintiff Paul Vassel, *pro se*, filed an Amended

Complaint in this action on October 15, 2019.[1]  He alleges

various consumer protection and civil rights violations arising

out of the allegedly unlawful repossession of his vehicle on

May 17, 2019 and his arrest during that event.  *See id.* at 28.

Plaintiff seeks $210 million in total damages[2] from a number of

defendants: Palisades Funding Corp. ("Palisades"); Palisades

---

[1] By Memorandum and Order dated September 10, 2019, Judge Matsumoto granted
his request to proceed *in forma pauperis*, and dismissed the complaint with
leave to replead, among other rulings.  Dkt. No. 5.  The case was
subsequently reassigned to the undersigned judge.

[2] Plaintiff also seeks attorney's fees and costs of the action under 42 U.S.C.
§ 1988.  Am. Compl. at 28.  However, "a pro se litigant who is not a lawyer
is not entitled to attorney's fees" under Section 1988.  *Kay v. Ehrler*, 499
U.S. 432, 435 (1991).

employees Willfredo Toro,[3] Michael Jordon, Victoria Vandergrift and Ashlee Chavez; Queens National Auto Group, Corp. ("Queens National Auto") and its employee Offer Ben Moshe; the New York City Police Department; the 105th Police Precinct; Sergeant Nathaniel, Sergeant Reimbave, and Officer Gregory Nuzzi of the 105th Police Precinct; former Commissioner James Patrick O'Neill and his successor, and Deputy Inspector Neteis Gilbert of the NYPD; the City of New York; the County of Queens; "John Does 1 to 10"; and "Police Does 1 to 10."  Dkt. No. 6, Am. Compl. at 1.

For the reasons set forth below, the Amended Complaint is dismissed in part.

## BACKGROUND

Plaintiff alleges, and the court assumes, the following facts: on May 17, 2019, Willfredo Toro and a tow-truck driver whose name remains unknown ("John Doe 1") — both of whom he says are employees of Palisades — attempted to repossess his 2018 Ford Transit T-350 Van (the "vehicle").  Am. Compl. at 5-6, 10.  Plaintiff claims this was a "mistake" because "all proper

---

[3] Where the spelling of an individual's name differs between the case caption and the text of the Amended Complaint, the Court adopts the spelling in the case caption.

payments were tendered" on the vehicle.[4]  *Id.* at 6.  Plaintiff
alleges that defendants Toro and Doe 1 had no court order to
repossess the vehicle, *id.* at 7, 10, and that he repeatedly
stated he did not consent to the repossession, *id.* at 6.  The
complaint describes how defendants Toro and Doe 1 "were
proceeding to pull" him out of his vehicle as he was
"screaming."  *Id.*  When the effort to remove him was
unsuccessful, he alleges, they called the police.  *Id.*

        Sergeant Nathaniel and Officer Nuzzi of the 105th
Precinct arrived at the scene, and Sergeant Nathanial "order[ed]
[him] to come out of the [vehicle] and stated that it will be
repossessed."  *Id.* at 7.  Vassel was then arrested for
obstructing governmental administration in the second
degree.  *Id.*  In the course of the arrest, Officer Nuzzi "pushed
[him] against the van, [roughed him] up," and placed him in
handcuffs that were "very tight" and that "cut[] into [his]
skin."  *Id.* at 7-8.  Officer Nuzzi then allegedly searched his

---

[4] Given this allegation, it bears note that Plaintiff attached to the Amended
Complaint a letter that Palisades sent him on May 10, 2019.  Dkt. No. 6 at
47.  This letter states: "After several attempts to contact you in regards to
your account with Palisades Funding Corp., you seem unwilling to work with us
to bring your account up to date or make necessary arrangements to do so.  It
is imperative you take the first step in contacting our office in regards to
your delinquent account as soon as possible."  *Id.*  The letter lists the
"amount past due" as $920.64.  *Id.*  Still, at this preliminary stage of the
proceedings, the Court assumes the veracity of the allegations set out in the
text without qualification.

pockets, seized the keys to his vehicle, and gave those keys to
Doe 1. *Id.* at 9-10. Once he was arrested, Plaintiff states,
Doe 1 towed his vehicle, *id* at 8, and certain property inside
the vehicle has not since been returned to him, including a
bible, prayer shawl, and other personal items, *id.* at 10.

Plaintiff claims he was taken to the 105th Precinct,
where he was held for over seventeen hours. *Id.* at 13. While
at the precinct, Sergeant Reimbave, Officer Nuzzi, Sergeant
Nathaniel, and an unnamed officer ("Police Doe 1") "grabbed
[him] out of the cell and held [him] down without [his] consent
to take fingerprints and [a] mug shot." *Id.* at 12; *see also*
Dkt. No. 6, Notice of Claim at 3 (stating that the officers
"grabbed me out of the cell and held me down and took my private
[] property"). The next day, May 18, 2019, Plaintiff was
released, and the obstruction charge was later adjourned in
contemplation of dismissal. Am. Compl. at 13.

In this action, Plaintiff brings consumer-protection
claims under the Fair Debt Collection Practices Act, *id.* at 25-
26, Truth in Lending Act, *id.*, and Fair Credit Reporting Act,
*id.* at 25; what he styles as a state-law claim for "breach of
the peace" under the New York Uniform Commercial Code, *id.* at
23-25; and a common-law conversion claim, *id.* at 23-24.
Plaintiff also sues under 42 U.S.C. § 1983, alleging due process

4

violations, *id.* at 19, false arrest, *id.* at 16, use of excessive force, *id.* at 18, malicious prosecution, *id.* at 17, failure to train, *id.* at 20-23, and municipal liability, *id.*; as well as claims under 18 U.S.C. §§ 241 and 242, *id.* at 16-18.

## STANDARD OF REVIEW

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, a court must accept a complaint's factual allegations as true; however, this tenet is inapplicable to conclusory statements. *Id.* Although a court must construe a *pro se* plaintiff's pleadings liberally, a *pro se* complaint must still state a claim to relief that is plausible on its face. *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010).

Where (as here) a Plaintiff is proceeding *in forma pauperis*, the district court must screen the complaint and dismiss any action that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

I.   **Fair Debt Collection Practices Act, Fair Credit Reporting Act, and Truth in Lending Act**

The Amended Complaint alleges violations of the Fair Debt Collection Practices Act ("FDCPA") and Truth in Lending Act ("TILA") against Palisades, Vandergrift, Jordon, Chaves, Queens National Auto, and Ben Moshe.  Plaintiff also alleges a violation of the Fair Credit Reporting Act ("FCRA") against Palisades, Vandergrift, Jordon, and Chaves.

Pursuant to the FDCPA, a "debt collector" may repossess property through "nonjudicial action" – *i.e.*, without a court order – only if the creditor has a "present right to possession of the property claimed as collateral through an enforceable security interest."  15 U.S.C. § 1692f-(6)(A). Whether there is a "present right to possession" turns on the New York Uniform Commercial Code ("UCC").  *See Gerbasi v. NU Era Towing & Serv.*, Inc., No. 17-CV-553, 2020 WL 1131218, at *2 (W.D.N.Y. Mar. 9, 2020).  Under the UCC, a debt collector may repossess property "without judicial process, if it proceeds without breach of the peace."  N.Y. U.C.C. § 9-609; *see also Barrett v. Harwood*, 189 F.3d 297, 300 (2d Cir. 1999) ("Hence, where repossession cannot be accomplished without a breach of the peace, a retaking must be effected by legal process.").  The gravamen of Plaintiff's consumer protection complaint, when

construed liberally, appears to be that a "breach of the peace" occurred when he was forced out of his vehicle and it was repossessed without a court order.

The UCC does not define "breach of the peace."  In the criminal context, New York State courts have described breach of the peace to be "a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community." *People v. Smith*, 19 N.Y.2d 212, 216 (1967). Courts have found that "the taking of a vehicle on default from a public location over the oral objection of the owner, however strenuous, is not a breach of the peace unless accompanied by factors indicating that the activities of the repossession agent are of a kind likely to cause violence, or public distress and/or consternation." *Gill v. Bd. of Nat'l Credit Union Admin. for Sikh Fed. Credit Union*, No. CV 93-1597, 2018 WL 5045755, at *10 (E.D.N.Y. Oct. 16, 2018) (citing cases).  Plaintiff claims that Palisades and its agents resorted to force to effectuate the repossession – that they were "pulling [him] out of his car."  Therefore, Plaintiff's FDCPA claim against Palisades survives the *in forma pauperis* ("*IFP*") review required by 28 U.S.C. § 1915(e).

7

Plaintiff does not allege that Queens National Auto is a "debt collector" (as he must under the FDCPA) or, indeed, allege any specific facts at all about how Queens National Auto participated in the events in question.  Queens National Auto is therefore dismissed from this action without prejudice.

The FCRA and TILA claims do not survive *IFP* review. The FCRA claim is predicated on the allegation that Palisades reported "derogatory credit information" that it knew to be incorrect to three credit bureaus.  Am. Compl. at 14.  The FCRA requires those who furnish information to credit reporting agencies to refrain from knowingly reporting inaccurate information.  *See Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) (discussing 15 U.S.C. § 1681s-2(a)).  The Second Circuit, however, has held that there is no private right of action for a violation of this provision.  *Id.*  Therefore, the claim under Section 1681s-2(a) is dismissed with prejudice.

Plaintiff alleges that Palisades, Queens National Auto, and certain of their employees violated TILA by failing to notify him of his right to rescind the loan contract under that statute.  TILA, however, provides a right of rescission only in connection with credit transactions that are secured by "property which is used as the principal dwelling of the person to whom credit is extended."  15 U.S.C. § 1635(a).  Plaintiff

8

does not allege that the loan in question was secured by his principal dwelling.  Therefore, this claim is dismissed without prejudice to replead, should Plaintiff be able to allege such a security interest.

## II.   New York UCC and Conversion

Plaintiff brings two state-law claims against Palisades, Toro, John Doe 1, Vandergrift, Jordon and Chaves. The first appears to be a claim for injunctive relief pursuant to Section 9-609 of the New York Uniform Commercial Code.  *Cf. Barrett*, 189 F.3d at 304 (noting that a plaintiff may seek an order in state court requiring return of a vehicle repossessed in violation of the UCC).  This claim turns on the same consideration discussed above about whether a breach of the peace occurred.  Therefore, per the discussion above, the Section 9-609 claim may proceed.   The second is a state common-law claim for conversion arising out of the same repossession of the car and alleged taking of his personal property.  *Clark v. Auto Recovery Bureau Conn.*, Inc., 889 F. Supp. 543, 548 (D. Conn. 1994) (explaining that "conversion may occur when a valid repossession of collateral results in an incidental taking of other property, unless the loan agreement includes the debtor's consent to the incidental taking").  This claim, too, may proceed beyond this preliminary stage.

9

### III.   42 U.S.C. § 1983

Plaintiff brings 42 U.S.C. § 1983 claims against certain of the public and private defendants for alleged due process violations, false arrest, use of excessive force, malicious prosecution, failure to train, and municipal liability.

#### 1.   Due Process

Plaintiff brings a due process claim for unlawful seizure of property against Sergeant Nathanial, Officer Nuzzi, Palisades, Victoria Vandergrift, Ashlee Chavez, Willfredo Toro, and John Doe 1.  A debtor may have a due-process claim when property "in which [he] enjoyed a lawful possessory interest [is repossessed] by state action in violation of the constitution." *Barrett*, 189 F.3d at 301.  Police officers may, of course, keep the peace in connection with repossessions and respond appropriately to reports of disturbance.  But if a debt collector wants their affirmative assistance in a repossession effort, it needs to obtain a court order.  *See id.*  ("The Constitution requires notice and a prior hearing before a state can *assist* a secured creditor in the repossession of a debtor's property.") (emphasis added).

Given Plaintiff's contention that he was up to date on his car payments, the Court draws (at this stage) the favorable

10

inference that Plaintiff had "a lawful possessory interest" in the vehicle at the time of repossession.  Still, there can be no Section 1983 claim unless the alleged participation by police officers rendered the dispossession a state action.  In *Barrett*, "the crucial question [was] whether the police officer was (1) present simply to stand by in case there was a breach of the peace, or (2) taking an active role that either affirmatively assisted in the repossession over the debtor's objection or intentionally intimidated the debtor so as to prevent him from exercising his legal right to object to the repossession."  *Id.* Based on Plaintiff's allegations that the officers affirmatively ordered him out of the vehicle as he was objecting to the repossession, arrested him, and gave the keys to the vehicle to Doe 1, this claim, too, survives the *sua sponte* review required at this stage.

       The Court recognizes that whether the officers have qualified immunity should be resolved at the "earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  And the *IFP* statute does require a court to screen a *pro se* complaint for claims seeking "monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  However, the Court will await the public

defendants' answer or response to the complaint before considering this issue.

### 2. False Arrest

Plaintiff's false arrest claim against Officer Nuzzi and Sergeant Nathaniel may proceed from this preliminary stage. To plead a claim for false arrest, a plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Jackson v. City of New York*, 939 F. Supp. 2d 235, 248 (E.D.N.Y. 2013). Confinement is privileged if there was probable cause at the time of the arrest. *See Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007). Here, Plaintiff alleges he was arrested for obstructing government administration in the second degree. N.Y. Penal Law § 195.05 ("A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law . . . or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act."). Plaintiff pleads that after he refused to allow Palisades to repossess his vehicle without a court order, police officers were called to the scene, ordered

12

him out of his car, arrested him, and held him at the station
overnight.  While many questions obviously remain outstanding on
this claim, it, too, may proceed past *IFP* review.

### 3. Excessive Force

Plaintiff's excessive force claims against Sergeant
Reimbave, Sergeant Nathaniel, Officer Nuzzi, and Police Doe 1
may also proceed from this preliminary stage.  For this cause of
action, a defendant is liable if "the force used exceeded the
force needed for the factual circumstances."  *Graham v. City of
New York*, 928 F. Supp. 2d 610, 618 (E.D.N.Y. 2013).  Plaintiff
alleges that Officer Nuzzi "pushed [him] against the van,
[roughed him] up" and placed him in handcuffs that were "very
tight" and "cut[] into [his] skin."  Am. Compl. at 7-8.
Plaintiff also alleges that at the 105th Precinct, Sergeant
Reimbave, Officer Nuzzi, Sergeant Nathaniel, and Police Doe 1
"grabbed [him] out of the cell and held [him] down without his
consent."  *Id.* at 12.  The excessive force claim may proceed
past *IFP* review.

### 4. Malicious Prosecution

Plaintiff's malicious prosecution claim against
Sergeant Nathaniel and Officer Nuzzi, however, must be
dismissed.  To plead malicious prosecution, a plaintiff must
allege: "(1) the initiation or continuation of a criminal

13

proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).  Plaintiff received an adjournment in contemplation of dismissal, which is not a favorable termination for purposes of a malicious prosecution claim.  *Green v. Mattingly*, 585 F.3d 97, 103 (2d Cir. 2009).  Therefore, Plaintiff's malicious prosecution claim is dismissed with prejudice.

### 5. Failure to Train and Municipal Liability

Plaintiff asserts failure to train and municipal liability claims against Commissioner James Patrick O'Neill; Deputy Inspector Neteis Gilbert; the 105th Precinct; the New York City Police Department; the City of New York; and the County of Queens.  These claims are dismissed for the following reasons.

First, the claims against Commissioner O'Neill and Deputy Inspector Gilbert fail because, under Section 1983, a plaintiff must plead the defendant's personal involvement in the alleged constitutional deprivation.  *Farid v. Ellen,* 593 F.3d 233, 249 (2d Cir. 2010).  Personal involvement can be established through:

> (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003).

Here, Plaintiff alleges no such acts or omissions by Commissioner O'Neill or Deputy Inspector Gilbert personally. To the extent Plaintiff names these defendants based simply on their roles as supervisors, this fails because vicarious liability is "inapplicable" to Section 1983 suits. *Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Commissioner O'Neill and Deputy Inspector Gilbert are dismissed without prejudice.

Second, Plaintiff cannot sue the 105th Precinct or the New York City Police Department. Under Rule 17(b)(3) of the Federal Rules of Civil Procedure, a municipal entity's "capacity" to be sued in federal court is generally determined by the law of the state in which the district court is located. Here, the relevant authority is the New York City Charter, which provides that actions and proceedings to recover penalties for

15

legal violations shall be brought against the City of New York and not any agency thereof, except where otherwise provided by law.  *See* N.Y.C. Charter Ch. 17, § 396.  It is well recognized in this Circuit that agencies of New York City are not "suable" entities, including in 1983 actions.  See *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); see also *Baily v. New York City Police Dept.*, 910 F. Supp. 116, 117 (E.D.N.Y 1996).  The New York City Police Department is an agency of New York City, and therefore it cannot be sued.  The New York City Police Department and the 105th Precinct are dismissed with prejudice.

Finally, Plaintiff's claims against Queens County and the City of New York must be dismissed.  In order to sustain a Section 1983 claim against a municipal defendant, a plaintiff must show the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right.  *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 692 (1978).  The complaint must contain more than conclusory allegations related to the existence of such policy or custom.  *Plair v. City of New York*, 789 F. Supp. 2d 459, 466 (S.D.N.Y. 2011).  Therefore, Plaintiff's unsupported statement that the City of New York failed to train its employees is insufficient to allege a violation pursuant to *Monell*.  Neither

16

is an allegation of a single incident sufficient, as Plaintiff alleges here. "[I]solated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). Queens County and the City of New York are dismissed without prejudice.

## IV. 18 U.S.C. §§ 241, 242

Plaintiff also seeks relief pursuant to criminal statutes 18 U.S.C. §§ 241 and 242. Section 241 prohibits a conspiracy to infringe on a person's civil rights and Section 242 prohibits the deprivation of civil rights under color of law. As stated in Judge Matsumoto's prior Order, Dkt. No. 5 at 6, there is no private right of action under these criminal statutes. *Sheehy v. Brown,* 335 F. App'x 102, 104 (2d Cir. 2009) ("[C]laims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241-242, . . . are not cognizable, as federal criminal statutes do not provide private causes of action."). Therefore, Plaintiff's claims under 18 U.S.C. §§ 241 and 242 are dismissed with prejudice.

## CONCLUSION

Accordingly, this action is dismissed in part for failure to state a claim, pursuant to 28 U.S.C.

17

§ 1915(e)(2)(B).  The following claims are dismissed: TILA;
FCRA; Section 1983 claims for malicious prosecution, failure to
train, and municipal liability; and claims under 18 U.S.C.
§§ 241 and 242.  The Court grants Plaintiff leave to file a
second amended complaint within 30 days from the date of this
Order should he be able to allege plausible claims under TILA.

The FDCPA, N.Y. U.C.C. § 9-609, and tortious
conversion claims shall proceed, as shall the due process, false
arrest, and excessive force claims under Section 1983.  These
claims are asserted against some or all of the following
defendants: Palisades, Willfredo Toro, John Doe 1, Sergeant
Nathanial, Sergeant Reimbave, Officer Nuzzi, and Police Doe 1.

Plaintiff alleges no plausible facts whatsoever
regarding the liability of Michael Jordon, Victoria Vandergrift,
Ashlee Chavez, Queens National Auto, Offer Ben Moshe, John Does
2 to 10, or Police Does 2 to 10; therefore, these defendants are
dismissed without prejudice.  The following defendants are also
dismissed without prejudice: former Commissioner James Patrick
O'Neill and his successor; Deputy Inspector Neteis Gilbert; the
City of New York; and the County of Queens.  The 105th Precinct

and the New York City Police Department are dismissed with
prejudice.

Plaintiff must identify "John Doe 1" – the tow-truck
driver – and provide the full name of this defendant and the
address at which this defendant can be served. Plaintiff is
directed to submit this information in writing to the Clerk of
Court within thirty days from entry of this Order.

Pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir.
1997) (per curiam), the Court requests that the Corporation
Counsel of the City of New York ascertain the identity of the
"Police Doe 1" defendant of the 105th Precinct, against whom the
excessive force claim is alleged. Within forty-five days from
entry of this Order, Corporation Counsel shall provide the full
name of this defendant and the address at which this defendant
can be served.

Once the names of these defendants are provided,
Plaintiff's complaint shall be deemed amended and the Court will
direct service of summonses on these defendants.

The Clerk of Court is directed to issue summonses to
the Palisades Funding Corp. and its employee Willfredo Toro, as
well as Sergeant Nathaniel, Sergeant Reimbave, and Officer
Gregory Nuzzi of the 105th Precinct of the New York City Police
Department. The United States Marshals Service is directed to

19

serve the summonses and complaint upon these defendants without prepayment of fees.[5]  The Clerk of Court is directed to serve a courtesy copy of this Order upon the Corporation Counsel of the City of New York, Special Federal Litigation Division, and upon the *pro se* plaintiff and to note service on the docket.

The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).


SO ORDERED.

/s/ Eric Komitee
Eric Komitee
United States District Judge

Dated:    May 28, 2020
          Brooklyn, New York

---

[5] Administrative Order No. 2020-19 suspends service of process by the United States Marshals Service during the current national coronavirus emergency. Once service of process is reinstated, the summons, Amended Complaint, and this Order shall be served.

20